FILED

2020 Oct-26  PM 08:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THADDAEUS MYRICK, | ) | |
| NICHOLAS D. BRADEN, JESSIE POPEE, | ) | |
| and KENNETH L. FOUNTAIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-01728-MHH |
| | ) | |
| CITY OF HOOVER, ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## Defendant City of Hoover's Brief in Support of Its Motion for Summary Judgment

Summary judgment should be entered in favor of Defendant City of Hoover on all of the Plaintiffs' claims in this action. The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") provides that the entitlement to rights and benefits by employees on military leave like the Plaintiffs are those rights and benefits generally provided by the employer to other employees of similar status and pay. As the facts and argument below show, the Plaintiffs were provided the benefits on military leave that other employees of similar status and pay were provided while on any similar leaves. The Plaintiffs' claims fail as a matter of law, and summary judgment should be entered in favor of Hoover.

## Statement of Undisputed Facts

### I. Hoover's Policies on Forms of Leave, Accrual of Leave, and Paid Holidays.

1.   The City of Hoover has three types of leave that employees of Hoover may accrue:  (a) *sick leave* (which may be used if an employee is sick, injured in non-work-related activity, medical appointments, or to care for an injured or sick immediate family member); (b) *annual leave* (which is "primarily for vacation purposes" but can be used for most any personal reason); and (c) *personal leave* (which is required to be used for the reasons provided for sick leave before using sick leave, and may also be used at the employee's discretion like annual leave. (Doc. 13-5 (Lewis Dep. at 32:11–20 & Pl.'s Ex. 3); Doc. 16-1 (Lewis Decl. at ¶ 3); Doc. 13-6 at ECF[1] pp. 3–8).

2.   Full-time employees of Hoover receive 12 paid holidays per year, and each holiday is equal to 8 hours of pay (except for fire-department personnel not relevant to this case). An employee receives holiday pay for a paid holiday if the employee is in paid status immediately before or after the holiday. An employee on unpaid leave immediately before and immediately after the holiday does not receive holiday pay for holidays occurring during the employee's unpaid leave.

---

[1] The reference to ECF page numbers is a reference to the page numbers provided by the Court's CM/ECF system. Page number references without the ECF designation are to the documents own pagination.

(Doc. 13-5 (Lewis Dep. at 38:3–19, 70:5–10 & Pl.'s Ex. 3 at Hoover 000151); Doc. 16-1 (Lewis Decl. at ¶ 4); Doc. 13-6 at ECF p. 2).

3.    Annual leave and sick leave are accrued by an employee every pay period that the employee that is on paid status any time during the pay period, which means the employee is paid during the pay period for actual work or for any paid leave (for example, use of annual leave, sick leave, personal leave, paid jury duty, and paid administrative leave), except if three pay periods end in the same month (which typically occurs twice per year or 2 out of 26 pay periods annually, but occasionally occurs three times per year or 3 out of 27 pay periods) there are no leave accruals for the third pay period ending that month. The amount of annual leave accrued each pay period is between 3 hours (or 6 hours per month) and 8 hours (or 16 hours per month), depending on the employee's years of service. The amount of sick leave accrued is 3 hours per pay period (or 6 hours per month). An employee accrues 24 hours of personal leave per year. Personal leave is not accrued per pay period but is a one-time per year accrual on the employee's hire-date anniversary. Hoover's policy manual states that if an employee is in non-paid status for more than 30 days during the year, the amount of personal leave awarded is prorated based on the number of hours worked during that year. (Doc. 13-5 (Lewis Dep. at 43:1–4, 44:22 to 45:3, 48:19–23, 51:20–23, 66:7–18, 87:2–5,

97:20–23, 99:6–16, 107:13 to 108:5, 108:11 to 109:18, & Pls.' Ex. 3 at Hoover 000152– 000154); Doc. 16-1 (Lewis Decl. at ¶ 5); Doc. 13-6 at ECF pp. 3–5).

4.     An employee on unpaid status for the entire pay period does not accrue annual leave and sick leave for that pay period. Hoover's current policy manual says, "Employees in non-pay status are not eligible to accrue annual leave," and "Full-time employees in temporary or non-pay status are not eligible to accrue sick leave." (Doc. 13-6 at ECF pp. 3–5; Doc. 16-5 (Lewis Dep. at 56:1–9, 78:13–18, 82:14–18, 109:19–23, & Pls.' Ex. 3 at Hoover 000152–000154); Doc. 16-1 (Lewis Dec. at ¶ 6)).

5.     The current Hoover policy manual states under "Leave of Absence" (Section XI, Subsection K) that if an employee is granted a leave of absence without pay for up to one year, if the leave is "greater than 30 days," the employee "will not be entitled to any accrued leave or benefits during the period of absence." Subsection K is silent on a leave of absence under this subsection for 30 days or fewer, though it generally implies an employee on leave of absence of 30 days or fewer can accrue leave or benefits during the leave of absence. But this provision of Subsection K refers to "accrued leave or benefits" in general, and the statements under "Annual Leave" (Subsection F) and "Sick Leave" (Subsection H) are specific to those types of leave and say "Employees in non-pay status are not eligible to accrue annual leave" and "Full-time employees in temporary or non-pay

status are not eligible to accrue sick leave." While any other types of leave or benefits may accrue to an employee granted a leave of absence for 30 days or fewer under Subsection K, under Subsections F and H sick leave and annual leave do not accrue. The practice of Hoover has been to not allow an employee to accrue annual leave or sick leave in any pay period in which the employee was on non-pay status for the entire pay period regardless of the reason for the unpaid leave. (Doc. 16-1 (Lewis Decl. at ¶ 7); Doc. 13-5 (Lewis Dep. at 82:2 to 83:18 & Pls.' Ex. 3 at Hoover 000152, 000154, and 000166); Doc. 13-6 at ECF pp. 3, 5, and 11; *see also* Doc. 13-5 (Lewis Dep. at 78:13–18)).

6.      Pay periods are two-week periods that begin on a Sunday and end on the second Saturday after the beginning Sunday. (Doc. 16-1 (Lewis Decl. at ¶ 8); Doc. 13-5 (Lewis Dep. at 45:12–14)).

7.      A Hoover employee summoned for jury duty is paid his or her usual compensation in accordance with Alabama law. Because an employee on jury duty is on paid status, the employee still accrues annual and sick leave and is paid for holidays. (Doc. 13-5 (Lewis Dep. at 67:16 to 70:10 & Pls.' Ex. 3 at Hoover 000165); Doc. 16-1 (Lewis Decl. at ¶ 9); Ala. Code § 12-16-8(c)).

8.      Hoover employees on military leave for qualified service in the military are paid their regular compensation by Hoover for up to 168 hours (or 21 eight-hour days) per calendar year. When on *paid* military leave, an employee accrues

annual and sick leave and is paid for any paid holidays. (Doc. 13-5 (Lewis Dep. at 84:8–19 & Pls.' Ex. 3 at Hoover 000169); Doc. 13-6 at ECF p. 14; Doc. 16-1 (Lewis Decl. at ¶ 10); Ala. Code § 31-2-13(a)).

9.    Once an employee on military leave exhausts or otherwise is not using the annual 168 hours of paid military leave and is also not using any other form of paid leave but is classified as on "leave without pay" for a full pay period, the employee does not accrue any annual or sick leave. And the employee on unpaid military leave for a full pay period also does not receive holiday pay for any holiday falling in that pay period. (Doc. 16-1 (Lewis Dec. at ¶ 11); Doc. 13-5 (Lewis Dep. at 108:6–10)).

## II.   Military Differential Pay

10.    Hoover has a benefit called military differential pay that allows an employee on military leave to apply for and be paid the difference in what the employee is making serving in the military and what the employee would have been paid working for Hoover. If a Hoover employee is on military leave for more than 30 days and the employee's military pay is less than what the employee's regular compensation was when working for Hoover, the employee may apply for military differential pay and receive the difference. This is a benefit voluntarily adopted by Hoover and is not required by law. The military differential pay is usually applied for periodically, not each week or pay period, is paid in a lump sum, and documentation of the employee's military pay must be provided. An

employee's receipt of military differential pay does not change the employee from non-pay status to a paid status. Paid status or non-pay status is determined at the time of the pay period and is not affected by an application or receipt for military differential pay. (Doc. 16-1 (Lewis Decl. at ¶ 12); Doc. 13-5 (Lewis Dep. at 74:15 to 75:23, 78:13–18, 107:12 to 108:10, 114:15 to 115:5, 115:20 to 116:9, 116:23 to 117:11)).

11.   Of the four Plaintiffs, Jessie Popee is the only one who received any military differential pay. (Doc. 13-3 at ECF pp. 27–47; Doc. 16-1 (Lewis Decl. at ¶ 13)).

### III.  The Plaintiffs' Leave Earned

12.   Exhibits 13, 14, 15, and 16 of the joint exhibit submission (Docs. 13-13, 13-14, 13-15, and 13-16), are copies of spreadsheets prepared for each Plaintiff titled "Leave Earned and Paid Time Comparison" (the "Leave Earned spreadsheet") and show each pay period and the hours of paid or unpaid status of the employee during the pay period.[2] The pay periods that were fully "leave without pay" have been highlighted. In those pay periods that were fully "leave without pay," the Plaintiff did not accrue annual or personal leave during that pay period, or if the Leave Earned spreadsheet shows he did, it is noted as a mistake in

---

[2] These are also Exhibit 9 to Mike Lewis's deposition, except the one for Popee that is in the deposition exhibit had a minor correction, so Exhibit 16 (Doc. 13-16) is the corrected version, and Exhibits 13, 14, 15, and 16 have highlighting on the pay periods where the entire pay period was leave without pay. (Doc. 13-5 (Lewis Dep. at Ex. 9); Docs. 13-13, 13-14, 13-15, and 13-16).

the notes column and adjustments have been made to the leave of the three Plaintiffs who are current employees: Fountain, Popee, and Braden. (Doc. 16-1 (Lewis Decl. at ¶ 14; Docs. 13-13, 13-14, 13-15, and 13-16; Doc. 13-5 (Lewis Dep. at 121:4–21, 123:18 to 124:10, 124:18 to 126:17 & Pl.'s Ex. 9); *see also* ¶ 4 of this statement of facts above and supporting citations).

13.    In preparing and reviewing the spreadsheets for each Plaintiff (Docs. 13-13, 13-14, 13-15, and 13-16), Hoover found some pay periods where the Plaintiff mistakenly accrued leave when he should not have and also pay periods where the Plaintiff mistakenly did not accrue leave when he should have. The last two columns on the right of the spreadsheet in columns headed "notes" and "adjustments" reflect those that were done incorrectly, and the adjustments to leave amounts of the currently employed Plaintiffs have been made (Fountain, Popee, and Braden). Myrick is no longer employed by the City of Hoover and no adjustments were made, but there were none to make in his favor. Hoover's computer system does not automatically turn off accruals for annual leave and sick leave when an employee is only on leave without pay for the pay period. Instead, when someone goes on leave without pay, the leave accrual has to manually be turned off, and when that employee goes back on paid status by returning to work or using paid leave, the leave accrual must be manually turned back on. Sometimes that gets overlooked and mistakes are made.  All of the mistakes for accruals for

annual and sick leave noted in the Earned Leave spreadsheets for Fountain, Popee, and Braden have been corrected. (Doc. 16-1 (Lewis Decl. at ¶ 15; Docs. 13-13, 13-14, 13-15, and 13-16; Doc. 13-5 (Lewis Dep. at 21:11 to 25:4, 121:4–21, 123:18 to 126:17 & Pls.' Ex. 9)).

14.     Plaintiff Nicholas Braden was on leave without pay for the entirety of the following 29 pay periods (identified by year-pay period number[3]) and in all pay periods other than these 29 during his employment with Hoover he received some form of pay for hours worked, paid military leave, sick leave, annual leave, personal leave, or comp time:

| | Pay Period No. | | Pay Period No. |
|---|---|---|---|
| 1 | 2011-20 | 16 | 2017-25 |
| 2 | 2011-21 | 17 | 2017-26 |
| 3 | 2011-22 | 18 | 2018-01 |
| 4 | 2011-23 | 19 | 2018-02 |
| 5 | 2011-24 | 20 | 2018-03 |
| 6 | 2017-15 | 21 | 2018-05 |
| 7 | 2017-16 | 22 | 2018-06 |
| 8 | 2017-17 | 23 | 2018-08 |
| 9 | 2017-18 | 24 | 2018-09 |
| 10 | 2017-19 | 25 | 2018-10 |
| 11 | 2017-20 | 26 | 2018-11 |
| 12 | 2017-21 | 27 | 2018-12 |
| 13 | 2017-22 | 28 | 2018-13 |
| 14 | 2017-23 | 29 | 2018-18 |
| 15 | 2017-24 | | |

(Doc. 13-14).

---

[3] For example, the first pay period of 2016 would be "2016-1" and the last pay period of 2016 would be "2016-26." In Exhibits 13, 14, 15, and 16 (Docs. 13-13, 13-14, 13-15, and 13-16) there is a column specifying the pay period number.

15.    Thaddaeus Myrick was on leave without pay for the entirety of the following 30 pay periods (identified by year-pay period number), and in all pay periods other than these 30 he received some form of pay for hours worked, paid military leave, sick leave, annual leave, personal leave, or comp time:

| | Pay Period No. | | | Pay Period No. |
|----|------------|---|----|------------|
| 1  | 2017-04 | | 16 | 2018-01 |
| 2  | 2017-05 | | 17 | 2018-02 |
| 3  | 2017-10 | | 18 | 2018-03 |
| 4  | 2017-15 | | 19 | 2018-04 |
| 5  | 2017-16 | | 20 | 2018-05 |
| 6  | 2017-17 | | 21 | 2018-06 |
| 7  | 2017-18 | | 22 | 2018-07 |
| 8  | 2017-19 | | 23 | 2018-08 |
| 9  | 2017-20 | | 24 | 2018-09 |
| 10 | 2017-21 | | 25 | 2018-10 |
| 11 | 2017-22 | | 26 | 2018-11 |
| 12 | 2017-23 | | 27 | 2018-12 |
| 13 | 2017-24 | | 28 | 2018-13 |
| 14 | 2017-25 | | 29 | 2018-15 |
| 15 | 2017-26 | | 30 | 2018-16 |

(Doc. 13-13).

16.    Kenneth Fountain was on leave without pay for the entirety of the following 91 pay periods (identified by year-pay period number), and in all pay periods other than these 91 he received some form of pay for hours worked, paid military leave, sick leave, annual leave, personal leave, or comp time:

| | Pay Period No. | | Pay Period No. | | Pay Period No. |
|---|---|---|---|---|---|
| 1 | 2007-24 | 32 | 2009-09 | 63 | 2010-16 |
| 2 | 2007-25 | 33 | 2009-10 | 64 | 2010-17 |
| 3 | 2007-26 | 34 | 2009-11 | 65 | 2010-18 |
| 4 | 2008-01 | 35 | 2009-12 | 66 | 2010-19 |
| 5 | 2008-05 | 36 | 2009-13 | 67 | 2010-20 |
| 6 | 2008-06 | 37 | 2009-14 | 68 | 2010-21 |
| 7 | 2008-07 | 38 | 2009-15 | 69 | 2010-22 |
| 8 | 2008-08 | 39 | 2009-16 | 70 | 2010-23 |
| 9 | 2008-09 | 40 | 2009-17 | 71 | 2010-24 |
| 10 | 2008-10 | 41 | 2009-18 | 72 | 2010-25 |
| 11 | 2008-11 | 42 | 2009-19 | 73 | 2010-26 |
| 12 | 2008-12 | 43 | 2009-20 | 74 | 2011-01 |
| 13 | 2008-13 | 44 | 2009-21 | 75 | 2011-02 |
| 14 | 2008-14 | 45 | 2009-22 | 76 | 2011-03 |
| 15 | 2008-15 | 46 | 2009-23 | 77 | 2011-04 |
| 16 | 2008-16 | 47 | 2009-24 | 78 | 2011-05 |
| 17 | 2008-17 | 48 | 2009-25 | 79 | 2011-06 |
| 18 | 2008-18 | 49 | 2009-26 | 80 | 2011-07 |
| 19 | 2008-19 | 50 | 2009-27 | 81 | 2011-08 |
| 20 | 2008-20 | 51 | 2010-04 | 82 | 2011-09 |
| 21 | 2008-21 | 52 | 2010-05 | 83 | 2011-10 |
| 22 | 2008-22 | 53 | 2010-06 | 84 | 2011-11 |
| 23 | 2008-23 | 54 | 2010-07 | 85 | 2011-12 |
| 24 | 2008-24 | 55 | 2010-08 | 86 | 2011-13 |
| 25 | 2008-25 | 56 | 2010-09 | 87 | 2011-14 |
| 26 | 2008-26 | 57 | 2010-10 | 88 | 2011-15 |
| 27 | 2009-01 | 58 | 2010-11 | 89 | 2011-16 |
| 28 | 2009-05 | 59 | 2010-12 | 90 | 2011-20 |
| 29 | 2009-06 | 60 | 2010-13 | 91 | 2011-21 |
| 30 | 2009-07 | 61 | 2010-14 | | |
| 31 | 2009-08 | 62 | 2010-15 | | |

(Doc. 13-15).

17.    Jessie Popee was on leave without pay for the entirety of the following

103 pay periods (identified by year-pay period number), and in all pay periods

other than these 103 he received some form of pay for hours worked, paid military

leave, sick leave, annual leave, personal leave, or comp time:

| | Pay Period No. | | Pay Period No. | | Pay Period No. |
|---|---|---|---|---|---|
| 1 | 2001-22 | 36 | 2004-09 | 71 | 2005-21 |
| 2 | 2001-23 | 37 | 2004-10 | 72 | 2005-22 |
| 3 | 2001-25 | 38 | 2004-11 | 73 | 2005-23 |
| 4 | 2001-26 | 39 | 2004-12 | 74 | 2005-24 |
| 5 | 2002-04 | 40 | 2004-13 | 75 | 2005-25 |
| 6 | 2002-05 | 41 | 2004-14 | 76 | 2005-26 |
| 7 | 2002-06 | 42 | 2004-15 | 77 | 2006-01 |
| 8 | 2002-07 | 43 | 2004-16 | 78 | 2008-18 |
| 9 | 2002-08 | 44 | 2004-17 | 79 | 2008-19 |
| 10 | 2002-09 | 45 | 2004-18 | 80 | 2008-20 |
| 11 | 2002-10 | 46 | 2004-19 | 81 | 2008-21 |
| 12 | 2002-11 | 47 | 2004-20 | 82 | 2008-22 |
| 13 | 2002-12 | 48 | 2004-21 | 83 | 2008-23 |
| 14 | 2002-13 | 49 | 2004-22 | 84 | 2008-24 |
| 15 | 2002-14 | 50 | 2004-23 | 85 | 2008-25 |
| 16 | 2002-15 | 51 | 2004-24 | 86 | 2008-26 |
| 17 | 2002-16 | 52 | 2004-25 | 87 | 2009-01 |
| 18 | 2002-17 | 53 | 2004-26 | 88 | 2009-02 |
| 19 | 2002-18 | 54 | 2005-01 | 89 | 2009-03 |
| 20 | 2002-19 | 55 | 2005-02 | 90 | 2009-04 |
| 21 | 2002-20 | 56 | 2005-06 | 91 | 2009-08 |
| 22 | 2002-21 | 57 | 2005-07 | 92 | 2009-09 |
| 23 | 2002-22 | 58 | 2005-08 | 93 | 2009-10 |
| 24 | 2002-23 | 59 | 2005-09 | 94 | 2009-11 |
| 25 | 2002-24 | 60 | 2005-10 | 95 | 2009-12 |
| 26 | 2002-25 | 61 | 2005-11 | 96 | 2009-13 |
| 27 | 2002-26 | 62 | 2005-12 | 97 | 2009-14 |
| 28 | 2003-04 | 63 | 2005-13 | 98 | 2009-15 |
| 29 | 2003-05 | 64 | 2005-14 | 99 | 2009-16 |
| 30 | 2003-06 | 65 | 2005-15 | 100 | 2010-18 |
| 31 | 2003-07 | 66 | 2005-16 | 101 | 2010-19 |
| 32 | 2003-08 | 67 | 2005-17 | 102 | 2010-20 |
| 33 | 2003-09 | 68 | 2005-18 | 103 | 2011-13 |
| 34 | 2004-07 | 69 | 2005-19 | | |
| 35 | 2004-08 | 70 | 2005-20 | | |

(Doc. 13-16).

18.    The Plaintiffs were treated no differently when they were on leave without pay for military service than a comparable employee who was on unpaid status for unpaid Family and Medical Leave Act (FMLA) leave or other unpaid leave of absence.  (Doc. 16-1 (Lewis Decl. at 16)).

**Argument**

**I.    Plaintiffs were provided the rights and benefits generally provided by Hoover to employees having similar status and pay who are on leave of absence.**

The City of Hoover is entitled to summary judgment on the Plaintiffs' claim under Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") because when the Plaintiffs were on military leave they were treated the same as any other employee of similar status and pay who was on leave.

When evaluating a statutory claim, it is the language of the statute that is controlling. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240–41 (1989) ("as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute," and the "task of resolving the dispute over the meaning of § 506(b) begins where all such inquiries must begin: with the language of the statute itself"). USERRA provides that when an employee is absent for military service, the employee is "(A) deemed to be on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are

*generally* provided by the employer of the person to employees having *similar* seniority, *status*, *and pay* who are on furlough or leave of absence . . . while such person performs such service." 38 U.S.C. § 4316(b)(1) (emphasis added).[4] The language of the statute plainly provides that the entitlement to rights and benefits employees on military leave like the Plaintiffs are those rights and benefits generally provided by the employer to other employees of similar status and pay.

Hoover's policies provide that those employees who are on unpaid status do not accrue annual leave or sick leave. (Doc. 13-6 at ECF pp. 3 & 5). Hoover's policy provides that those on unpaid status for more than 30 days have their personal leave prorated. (Doc. 13-6 at ECF p. 4). Hoover's policy provides that to receive holiday pay and "employee must be … not on leave without pay … on the workday scheduled just before or just after the holiday." (Doc. 13-6 at ECF p. 2). Hoover's policies treat employees similarly based on their pay status, which is consistent with the "status" and "pay" language of § 4316(b)(1)(B).

---

[4] Hoover does not understand the Plaintiffs' Complaint (Doc. 1) to be asserting the annual leave, sick leave, personal leave, and holiday benefits are "benefits determined by seniority" under 38 U.S.C. § 4316(a) but are instead benefits not determined by seniority. Those types of leave are generally considered non-seniority benefits. *See, e.g.*, *Foster v. Dravo Corp.*, 420 U.S. 92, 101 (1975) (holding that vacation days accrued hourly were not seniority-based, because a holding to the contrary would be "sharply inconsistent with the common conception of a vacation as a reward for and respite from a lengthy period of labor"); *Hoefert v. American Airlines, Inc.*, 438 F. Supp. 3d 724, 736 (N.D. Tex. 2020) (holding that "sick-time accrual is not a seniority-based benefit" and the "weight of authority establishes that vacation time accrued is usually not a seniority-based benefit"); *Moss v. United Airlines, Inc.*, 420 F. Supp. 3d 768, 771 (N.D. Ill. 2019) ("vacation days do not incentivize longevity of employment, but rather compensate for (or in the Supreme Court's words, provide a 'respite from') the effort an employee has expended in the past").

The Plaintiffs were treated the same when on unpaid military leave as other employees on unpaid forms of leave. The Plaintiffs were treated the same when receiving paid forms of leave while on military leave as other employees on paid forms of leave. There is no evidence that other employees on unpaid status accrue annual or sick leave or that other employees on unpaid status the days before and after a holiday receive holiday pay. Thus, when on unpaid military leave, the Plaintiffs were provided the same "rights and benefits" provided to "employees having similar … status, and pay who are on furlough or leave of absence." 38 U.S.C. § 4316(b)(1)(B). Under the plain language of this statute, which focuses on similar status and pay, Hoover's policies comply with USERRA, and the Plaintiff's claims have no merit.

A regulation issued under USERRA specifically addresses accrual of vacation leave—which is essentially the same as Hoover's "annual" leave and similar to "personal" leave—and says that accrual of vacation leave "must be provided by an employer to an employee on a military leave of absence *only if* the employer provides that benefit to similarly situated employees on comparable leaves of absence." 20 CFR § 1002.50(c) (emphasis added); *see also* Doc. 13-6 at ECF pp. 3 & 5 (saying "Annual leave is provided primarily for vacation purposes but may be used for any purpose," and "Personal leave days may also be used at the employee's discretion for any personal reason"). There is no principled reason that

accrual of sick leave or eligibility for paid holidays should be treated differently than accrual of vacation or annual leave. So under § 1002.50(c), the Plaintiffs are entitled to accrual of annual, sick, and personal leave and paid holidays "only if" Hoover provides those benefits to similarly situated employees on comparable leaves of absence.

In *Hoefert v. American Airlines, Inc.*, 438 F. Supp. 3d 724 (N.D. Tex. 2020), the court concluded that military leave was not comparable to any other type of leave raised by the plaintiff, and it therefore granted summary judgment to the defendant. In *Hoefert* the plaintiff claimed that he should have accrued sick leave and vacation leave while on military leave. *Id.* at 730. The court analyzed (1) the duration of leave, (2) the purpose of leave, and (3) the ability of the employee to choose when to take the leave, and concluded that military leave was not comparable to sick leave, vacation leave, leave for service with a union, leave for jury duty, and leave under the Family and Medical Leave Act (FMLA). *Id.* at 738–742. The court then granted the defendant employer's motion for summary judgment. Except for the union leave (which is not applicable), the analysis applied in *Hoefert* applies here, and summary judgment should also be entered for Hoover.

In another recent case, *Moss v. United Airlines, Inc.*, 420 F. Supp. 3d 768, 769 (N.D. Ill. 2019), an employee pilot brought a claim against his employer airline claiming he (and other employee pilots like him) were deprived of sick-time

accrual and vacation-time accrual while on military leave in violation of USERRA. Under the defendant employer's policy, pilot employees accrued vacation days and sick days on military leaves of up to 90 days (other employees only up to 30 days), and the plaintiff claimed it violated USERRA not to have accruals for military leaves beyond 90 days. *Moss*, 420 F. Supp. 3d at 773, 775. The plaintiff claimed that comparable forms of leave during which employees accrued vacation days and sick days were jury duty, "association leave" (meaning leave to work of the labor union), and sick leave. *Id.*

The court in *Moss* said that the case was not about short leaves of absence since the defendant permitted pilots to accrue vacation and sick days on leaves up to 90-days long, "which is well beyond the normal length of jury duty service." *Id.*, at 774. The court concluded that while the general 30-day limit on accruals of vacation and sick days did not apply to leave for jury duty, leave for jury duty "rarely approaches a complete month," so the defendant could not be said to "'generally provide' the benefit of vacation [or sick] day accrual during jury duty longer than 90 days." *Id.* The court rejected the "association leave" comparison because it said the defendant did "not generally provide benefits during [association leave] since the benefits are covered by the union." *Id.* The court also rejected "sick leave" as a comparable form of leave, noting that sick-leave days "will generally only cover relatively short-term illness" and that "[p]ilots suffering

a medical condition lasting longer than common illness or injury eventually will have to take 'Medical Leave' or 'Family & Medical Leave.'" *Id.*, at 775. The court said that "Medical Leave" and "Family & Medical Leave" were "forms of extended leave" and that the applicable policy "does not provide for accrual of vacation time during these leaves of absence generally." *Id.* The court concluded that the defendant employer's failure to provide accrual of vacation days and sick days during military leave longer than 90 days does not violate USERRA and entered summary judgment for the defendant. *Id.*

In this case, if one had to choose something that was the closest comparable form of leave to military leave (and under *Hoefert* and the language of the statute, no comparable form of leave has to be identified), the most comparable is FMLA leave. Both are unpaid unless some other form of paid leave is used. Both are job-protected leave provided for by federal statute. An employee on FMLA leave can use paid sick leave, paid personal leave, or paid annual leave concurrently, or it can be unpaid. An employee on military leave can use the 168 hours of state-required paid military leave, paid personal leave, or paid annual leave currently, or it can be unpaid. FMLA leave can be for as short a duration as 3 days or as long as 12 weeks (or, in the case of a military caregiver, up to 26 weeks). A military leave can also be just a few days, and it can be much longer, even multiple years (USERRA protects up to five years but there are exceptions to that five-year limit). But most

other forms of leave (e.g., sick leave, vacation, jury duty) are typically shorter than the 12 weeks permitted for FMLA leave. Both FMLA and military leave can be sometimes outside of the control of the employee. In neither FMLA nor military leave can the employer require the employee to be available for work or a call to come in to work.

Another long-term form of leave (up to one year) that could be comparable to military leave is the Leave of Absence that an employee may request under Section XI, Subsection K, of Hoover's policy manual. (Doc. 13-6 at ECF p. 11). FMLA leave and Leave of Absence are the only two main forms of leave that may be requested by an employee.

Paid Administrative Leave is used for a number of miscellaneous things. Most of them are very short term: "job-related training, inclement weather …, jury duty, voting, participating in City promotional examinations, attending a formal City hearing, participating as the subject of a City investigative review, attending court as a witness in cases not involving personal litigation, or other appropriate reasons as approved …." (Doc. 13-6 at ECF pp. 9–10). Jury duty can be long, but is generally not, as discussed in *Hoefert* and *Moss* (and since this Court calls people to serve as jurors, it will be generally aware that most people serve very short periods when called for jury service). The Plaintiffs requested police employees on administrative leaves for more than 120 consecutive days, and Hoover was only

able to find three from 1994 to the present, though admittedly Hoover's computer system is not designed for that type of query or search. (Doc. 13-8 at interrogatory no. 1). It can hardly be said that such long administrative leaves are "generally provided," and since nearly all of the reasons for administrative leave with pay are short-term reasons, it is not a comparable form of leave to extended military leave. 38 U.S.C. § 4316(b)(1). Additionally, an employee on paid administrative leave may be required to be available to be called back in to work. (Doc. 13-6 at ECF p. 10). That is not permitted for military or FMLA leave.

So, to the extent a comparable form of leave is needed for comparison, the best options are FMLA leave and the Leave Without Pay, neither of which provide for accrual of sick or annual leave or paid holidays. Military leave when unpaid is treated just like those forms of leave when unpaid. Summary judgment should, therefore, be entered in favor of the City of Hoover on the Plaintiffs' USERRA claim.

## II. The leave Hoover provides to employees on military leave permits them to accrue annual, sick, and personal leave if they choose.

Like in *Moss*, the Plaintiffs here are complaining only about longer term military leaves, because Hoover provides 168 hours (or 21 eight-hour days) of paid military leave during which annual and sick leave accrues. *Moss*, 420 F. Supp. 3d at 774; Doc. 16-1 (Lewis Decl. at ¶ 10). That is the approximate number of workdays in a month. So what is at issue are military leaves longer than a month,

and that is even assuming that an employee takes all of the 168 hours of paid military leave up front at the beginning of the leave. An employee — including the Plaintiffs — could choose to spread out the 168 hours of paid military leave over every pay period he is on leave. That would trigger a leave accrual in each of those pay periods, as only pay periods that are fully unpaid status do not accrue leave. The typical year has 26 pay periods (and in only 24 of those does an employee accrue leave), so even if on military leave for the whole year, any of the Plaintiffs could have chosen to spread out the paid leave over all pay periods or all pay periods where there was an accrual if he wanted to be on paid status at least some of every pay period and accrue leave. Since what the Plaintiffs are asking for could have been achieved if they had applied their paid leave differently, their claims must be rejected.

### III. The payment and receipt of military differential pay by Popee does not change this analysis.

Hoover has voluntarily adopted a policy providing military differential pay as a way to ensure that its employees serving in the military do not make less in wages when on military leave than they would working in their Hoover jobs. If anything demonstrates Hoover's valuing of its employees who serve in the military, this voluntary military differential pay policy does. It is unlike any other benefit provided. Unlike other forms of paid leave, including the 168 hours of paid military leave, it is not applied contemporaneously in a pay period and does not

show up as a code on any of the payroll reports. It is typically (if not exclusively) periodically applied for after, possibly well after, the pay is received in the military and the employee has the documentation. (Doc. 16-1 (Lewis Decl. at ¶ 12); Doc. 13-5 (Lewis Dep. at 74:18 to 76:15); Doc. 13-3 at ECF pp. 27–47 (Popee differential pay documents)). To determine that the differential pay, awarded months after the pay period it relates to, changes the paid or unpaid status of the employee and changes whether the employee is entitled to accrue annual or sick leave, would cause a disparity between those on military leave not eligible for differential pay because they make more in the military and those who get military pay. In any event, there is nothing else similar to the military differential pay benefit, so it should not be considered to change the analysis in this case.

## Conclusion

Based on the above facts and argument and on the evidence before the Court, Hoover requests that the Court enter a summary judgment on the Plaintiffs' claims.

Respectfully submitted on October 26, 2020.

*s/ Michael L. Jackson*
Michael L. Jackson
mjackson@wallacejordan.com

*s/ Cecil H. Macoy Jr.*
Cecil H. Macoy Jr.
cmacoy@wallacejordan.com

Attorneys for Defendant City of Hoover, Alabama

Of Counsel:
Wallace Jordan Ratliff & Brandt, LLC
P.O. Box 530910
Birmingham, Alabama 35253
(205) 870-0555